UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JAMES MALLORY                                                                                                   Plaintiff
a.k.a. Sadigga Al-Rahman Muhammad

v.                                                                                              Civil Action No. 3:20-CV-P249-RGJ

LT. MILLER et al.                                                                                              Defendants

\* \* \* \* \*

### MEMORANDUM OPINION AND ORDER

Plaintiff, James Mallory, filed a *pro se*, *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons set forth below, the Court will dismiss certain claims and allow other claims to proceed.

### I. STATEMENT OF CLAIMS

Plaintiff states that he is a pretrial detainee at the Louisville Metro Department of Corrections (LMDC). He names as Defendants in their individual and official capacities the following LMDC employees: Lt. Miller; Sgt. Christopher Wedding; Major William Ashby; Assistant Director Durham; and Classification Supervisor, Katreese Walker.

Plaintiff states that on March 12, 2020, he was returned to LMDC from the Lexington jail. He alleges that no contraband was found on him during the normal search conducted on him, yet Defendants Miller, Ashby, and Durham "illegally" authorized a "camera body footage" strip search for no reason. Plaintiff alleges that this was done to retaliate against him and dehumanize him for being sent back to LMDC.

Plaintiff next alleges that Defendants Miller, Wedding, Durham, Ashby, and Walker illegally held his legal mail for eight months causing him to miss "deadlines and filing fees motion file by my attorneys, attorneys letters, judge order from both federal [and] state courts sent to me via mail process."

Plaintiff also alleges that since returning to LMDC he has been housed in a single cell that has not been cleaned in three weeks, with a non-working toilet; mold, rust, and blood on the walls; and dust. He states that the dust has caused him two major headaches and chest problems. He states there are flies, spiders, and roaches, and that his requests to be moved from a single cell have been denied.

Finally, Plaintiff asserts that he has been denied his "court approved laptop, DVD processor, thumbdrive." He states that Defendants Wedding and Miller told him they were considered contraband. He states the deprivation of his property was done in retaliation.

As relief, Plaintiff requests monetary and punitive damages, and injunctive relief in the form of stopping the retaliation against him and not being housed in a single cell for 23 hours a day.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where

the factual contentions are clearly baseless. *Id.* at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### A. Official-capacity claims

If an action is brought against an official of a governmental entity in his official capacity, the suit should be construed as brought against the governmental entity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, Plaintiff's claims against Defendants in their official capacities are in actuality brought against Jefferson County as the real party in interest. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("Since the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of Matthews's complaint.").

"[A] municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis in original); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis*

*v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in *Pembaur*).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "'identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy.'" *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

Even reading the complaint liberally, the Court finds that Plaintiff has not alleged a Jefferson County custom or policy of denying him his constitutional rights. Therefore, the official-capacity claims will be dismissed for failure to state a claim upon which relief may be granted.

**B. Individual-capacity claims**

1. *Claim related to strip search*

Plaintiff states that even though no contraband was found on him during the normal search conducted on him on March 12, 2020, when he was returned to LMDC from the Lexington jail, Defendants Miller, Ashby, and Durham "illegally" authorized a "camera body footage" and strip searched him.

Claims based upon an illegal strip search are usually analyzed under the Fourth and/or Eighth or Fourteenth Amendments. Plaintiff's allegation fails to give rise to a constitutional violation under any of these standards.

Strip searches in a prison setting are not *per se* unreasonable because "[i]t cannot be questioned that the body cavities of prisoners are capable of secreting a surprising array of objects, and that inmates are willing to go to extreme lengths to obtain weapons and illicit drugs." *United States v. Oakley*, 731 F. Supp. 1363, 1370 (S.D. Ind. 1990); *see also Bell v. Wolfish*, 441 U.S. 520, 558 (1979). "Unquestionably, 'detect [ing] and deter[ring] the possession of contraband' is a legitimate penological objective [and a]bsent proof to the contrary, we must assume that a search of a prisoner is initiated in an effort to detect and deter contraband." *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 572 (6th Cir. 2013) (citation omitted). Here, Plaintiff was returned to LMDC from another facility. It makes sense that Defendants would use a strip search to "detect and deter contraband" from entering their facility, despite Plaintiff's conclusory assertion that Defendants had "no reason" except to dehumanize him.

Nor does the fact that a body camera was in use during the strip search make it unconstitutional. *See, e.g.*, *Hubbert v. Myers*, No. 92-1232, 1993 WL 326707, at *1 (6th Cir. Aug. 26, 1993) (per curiam) (affirming summary judgment against a plaintiff who alleged that the defendants "conducted a strip search which was taped by a video camera operated by a female employee" in violation of the Fourth, Eighth, and Fourteenth Amendments); *Henderson v. Oats*, No. 4:17-cv-P155-JHM, 2018 WL 2054563, at *2 (W.D. Ky. May 1, 2018) ("[T]he Court finds that Plaintiff's allegation that he was strip searched in a drunk tank with a camera fails to establish a violation of his constitutional rights.").

In light of this jurisprudence, the Court finds that Plaintiff's allegations that he was strip searched "on body cameras" fails to establish a violation of his constitutional rights.

2. *Claim related to using strip search as retaliation*

Plaintiff alleges that he was strip searched to retaliate against him and dehumanize him for being sent back to LMDC from the Lexington jail. The Sixth Circuit Court of Appeals has explained the elements necessary for a retaliation claim:

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

Plaintiff has not alleged that he was engaged in protected conduct. He only alleges that he was sent back to LMDC. Thus, Plaintiff fails to state a retaliation claim.

3. *Claim related to taking of computer and accessories*

Plaintiff asserts that he has been denied his "court approved laptop, DVD processor, thumbdrive." He states that Defendants Wedding and Miller told him they were considered contraband.

The Court is not sure what a "court approved laptop" is. However, Plaintiff does not allege a constitutional harm from being denied these items such as denial of access to courts. Nor does he allege a due-process claim for loss of this property. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). In order to assert a constitutional claim for deprivation of property, a plaintiff must allege that the state post-deprivation procedures are inadequate to remedy the deprivation. *See Parratt v. Taylor*, 451 U.S. at 543-44. The law of this Circuit is in

accord. For example, in *Vicory v. Walton*, 721 F.2d 1062 (6th Cir. 1983), the court held that "in § 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." *Id*. at 1066. The Sixth Circuit has found that Kentucky's statutory remedy for such losses is adequate within the meaning of *Parratt*. *See Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985). Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation of his personal property. Thus, he fails to state a § 1983 claim for being denied these items.

Plaintiff also alleges that the denial of these items was done in retaliation for exercising his constitutional rights. But this is simply a conclusory statement. He does not describe what constitutional right he is referring to nor does he provide any causal link between elements one and two of a retaliation claim. Conclusory allegations of retaliation are insufficient to demonstrate a causal connection. *See, e.g.*, *Shehee v. Grimes*, 39 F. App'x 127, 129 (6th Cir. 2002) (affirming dismissal of retaliation claim and stating that "conclusory allegations" and "bare allegations of malice on the defendants' part are not enough to establish retaliation claims").

### III. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's official-capacity claims and his claims related to the strip search, retaliation, and the taking of his computer and accessories are **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1).

The Court will allow Plaintiff's individual-capacity claims related to interference with his legal mail to continue against Defendants Miller, Wedding, Durham, Ashby, and Walker. The

Court also will allow Plaintiff's claims regarding being housed in a single cell and the conditions of his cell to continue against Defendants Miller, Wedding, Ashby, Walker, and Durham in their individual capacities.

The Court will enter a separate Order Directing Service and Scheduling Order to govern the development of the remaining claims. In allowing these claims to go forward, the Court expresses no opinion as to the ultimate merit or outcomes of those claims.

Date:

cc:     Plaintiff, *pro se*
        Defendants
        Jefferson County Attorney
A961.009