UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JAMES MALLORY                                                                                        Plaintiff
a.k.a. Sadigga Al-Rahman Muhammad

v.                                                                              Civil Action No. 3:20-CV-P249-RGJ

LT. MILLER, *et al*.                                                                               Defendants

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Before the Court is the motion to dismiss filed by Defendants (DN 9). Plaintiff James Mallory has responded (DN 15). Also before the Court is the motion for leave to file an amended complaint (DN 14) filed by Plaintiff. Defendants have responded (DN 17), and Plaintiff has replied (DN 27). The matters being ripe, the motion to dismiss will be denied, and the motion for leave to amend will be granted in part and denied in part for the reasons that follow.

**I. MOTION TO DISMISS**

Plaintiff is a pretrial detainee housed at Louisville Metro Department of Corrections (LMDC). This action was brought by Plaintiff, then proceeding *pro se*, on April 2, 2020.[1] Because Plaintiff was a prisoner suing government officials, the Court reviewed the complaint pursuant to 28 U.S.C. § 1915A. On initial review, the Court dismissed some of his claims but allowed to continue Plaintiff's individual-capacity claims related to interference with his legal mail against Defendants Lt. Miller, Sgt. Christopher Wedding, Assistant Director Durham, Major William Ashby, and Classification Supervisor Katreese Walker, as well as Plaintiff's claims

---

[1] Under the prisoner mailbox rule, a civil action is deemed filed on the date that it is deposited in the prison mail system for mailing. *See Richard v. Ray*, 290 F.3d 810, 813 (6th Cir. 2002) (holding that the mailbox rule "applies to civil complaints filed by pro se petitioners incarcerated at the time of filing").

regarding being housed in a single cell and the conditions of his cell against Defendants Miller, Wedding, Ashby, Walker, and Durham.

After being served, Defendants filed their motion to dismiss (DN 9), arguing that Plaintiff's claims are premised on the same facts as in another case pending in this Court brought by Plaintiff *pro se*, *Mallory v. Bolton*, 3:19-CV-120-CRS. They argue that the instant action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted because he has brought duplicative lawsuits by splitting his claims between two separate lawsuits.

Shortly after Defendants filed their motion to dismiss, attorney Felix Sharpe entered an appearance for Plaintiff.[2] On December 21, 2020, Plaintiff's counsel filed the motion for leave to file an amended complaint (DN 14) and a response to the motion to dismiss (DN 15). The counseled motions request the Court to grant leave to amend his complaint and then deny Defendants' motion to dismiss as moot in light of the amendments to the complaint.

A complaint is properly dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim where, construing the facts in the light most favorable to the plaintiff, it is clear that he could prove no facts which would entitle him to the relief requested. *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 515 (6th Cir. 1999). The doctrine of duplicative litigation invoked by Defendants allows "a district court [to] stay or dismiss a suit that is duplicative of another federal court suit" using "its general power to administer its docket." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). "The complex problems that can arise from multiple federal filings do not

---

[2] Mr. Sharpe is now also representing Plaintiff in *Mallory v. Bolton*, 3:19-CV-120-CRS, and has filed a motion to amend the complaint in that case as well.

lend themselves to a rigid test, but require instead that the district court consider the equities of the situation when exercising its discretion." *Id*.

It is clear that most of the alleged actions taken by Defendants in the instant action concern a different time period from that in the first filed case, *i.e.*, *Mallory v. Bolton*, 3:19-CV-120-CRS. Both cases name some of the same Defendants and concern incidents while housed at LMDC. Defendants in the first action are Walker, Ashby, and Michael Redmon, who is not currently a Defendant in this case. The continuing claims in the first-filed action are a First Amendment retaliation claim against Ashby and Walker for having the "SORT" team remove much of Plaintiff's personal property and placing him on "SORT" status and a First Amendment legal mail claim against Ashby and Redmon, who, according to Plaintiff's amended complaint in the first-filed action "made the mail lady [] copy my legal mail incoming and keep the original copy giving me the copy they made, letters from my lawyers, [orders] from the courts etc."

The time period for the instant complaint begins March 2020, when Plaintiff was returned to LMDC after being housed at a different facility, the Fayette County Detention Center (FCDC), from July 2017 until June 2019.[3]

The Court finds that the motion to dismiss should be denied because there are two time periods at issue in the two cases. The only claim that arguably overlaps in time in this case with the first-filed action has to do with the alleged interference with Plaintiff's mail. The time periods regarding interference with mail are not quite separate because the denial-of-mail claim in this action includes allegations that in April or May 2019 Ashby began withholding Plaintiff's mail and did so even after Plaintiff was transferred to FCDC in June 2019, and that Plaintiff did not in fact receive his held mail until February 2020. Thus, it appears that until February 2020,

---

[3] According to the motion for leave to amend, the proposed amended complaint in 3:19-cv-120-CRS makes clear that that action concerns the time period between July 1, 2017, and June 17, 2019, and that the instant action concerns actions after Plaintiff's return to LMDC on March 12, 2020, from being housed at FCDC.

Plaintiff would not have known his mail was being held. All of the claims in this case would have to have been supplemented to the complaint in the first action. Thus, these claims would not, as Defendants assert, be barred if the first suit were final. But the doctrine of duplicative litigation does not apply to claims that were not ripe at the time of the first suit. *Waad v. Farmers Ins. Exch.*, 762 F. App'x 256, 260 (6th Cir. 2019); *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 530 (6th Cir. 2006) (rejecting argument that claims based on the defendant's conduct after the initial complaint on the theory that the plaintiff could have amended her complaint to include the ongoing alleged wrongdoings were barred by *res judciata*, stating, "[W]e follow the majority rule . . . 'that an action need include only the portions of the claim due at the time of commencing that action,' because 'the opportunity to file a supplemental complaint is not an obligation.'" (citation omitted)).

Additionally, the claims in the two actions are different. Even the nature of the mail claim in the two suits are different. Plaintiff's amended complaint in the first-filed action alleged that Defendants Ashby and Redmon made the "mail lady" copy his incoming legal mail. Here, Plaintiff alleged in his complaint that Defendants Miller, Wedding, Durham, Ashby, and Walker illegally held his legal mail for eight months causing him to miss "deadlines and filing fees motion file by my attorneys, attorneys letters, judge order from both federal [and] state courts sent to me via mail process."

The Court does not find that this action is duplicative of the first-filed action. Accordingly, the Court will deny Defendants' motion to dismiss.

## II. MOTION FOR LEAVE TO AMEND THE COMPLAINT

The Court now turns its attention to Plaintiff's motion for leave to file an amended complaint. The proposed amended complaint wishes to add seventeen new Defendants; add claims that were dismissed on initial review of the original complaint, *i.e.*, loss of property and

4

unreasonable search; add allegations to claims that were allowed to continue on initial review, *i.e.*, right to receive mail and claims related to housing status and conditions of housing; and add several new claims, *i.e.*, access to courts by discontinuing his access to laptop and other equipment, a Sixth Amendment claim, and multiple retaliation claims.

In their response (DN 17) to the motion to amend, Defendants object to the proposed amended complaint because, they argue, it largely does not cure the defects in the original complaint. They also argue that the new claims are insufficient to state a claim.

The motion for leave to amend only refers to amending under Fed. R. Civ. P. 15(a). However, the Court notes that any allegations in the proposed amended complaint relating to events occurring after April 2, 2020, would actually be a supplement to the complaint. Fed. R. Civ. P. 15(d) ("On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.").

Rule 15(a)(2) embodies a permissive policy toward amended pleadings. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); *Brown v. Chapman*, 814 F.3d 436, 442 (6th Cir. 2016). A district court may deny a motion to amend because of (1) undue delay, (2) "bad faith or dilatory motive" by the party seeking to amend, (3) "repeated failure to cure deficiencies by amendments previously allowed," (4) undue prejudice to the opposing party, or (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Defendants make no argument that any of the first four factors is a reason to deny leave to amend, nor does the Court believe that any of these factors are in play. The Court will address whether each of the proposed amendments or supplements is futile. Allowing amendment or supplementation is futile when the pleading as amended or supplemented could not withstand a

motion to dismiss. *Spigno v. Precision Pipeline, LLC*, 59 F. Supp. 3d 831, 834 (E.D. Mich. 2014); *Clayton v. U.S. Army*, No. 3:09-CV-P295S, 2009 WL 4159260, at *2 (W.D. Ky. Nov. 23, 2009) (denying motion to supplement because of futility) (citing *City of Moundridge v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 29-30 (D.D.C. 2007)).

### A. Count I – "Right to Receive Legal Mail"

Count I of the proposed amended complaint alleges that Defendants Ashby, Durham, Miller, and Redmon violated Plaintiff's First Amendment rights by denying him access to his mail.[4] In their response (DN 17), Defendants argue that this claim is already being litigated in the first-filed action and that the claim for the alleged interference with legal mail should not be allowed in this action. This is the same argument raised by Defendants in their motion to dismiss, which the Court has denied. The Court will grant leave to amend this claim.

### B. Count II – "Loss of Property"

In the original complaint, Plaintiff alleged that he had been deprived of his "court approved laptop, DVD processor, thumbdrive" and that he had been told that these items were considered contraband. On initial review, the Court found that Plaintiff's loss-of-property claim failed to state a claim upon which relief may be granted because he had not alleged that Kentucky's post-deprivation procedures are inadequate to remedy the deprivation. *See Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981); s*ee also Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983) ("[I]n § 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate.").

---

[4] Although not clear from the proposed amended complaint, in DN 27, Plaintiff clarifies that he is not raising official-capacity claims.

6

Count II of the proposed amended complaint alleges that Defendants Ashby, Durham, Eubanks, and Miller violated Plaintiff's right to due process and to a post-deprivation remedy for his lost property, *i,e*, his laptop and accessories.

In response to the motion for leave to amend, Defendants argue that the proposed amended complaint does not cure the defect in this claim as set forth in the Court's initial review. Plaintiff offers no counter argument in his reply.

For the same reasons as set forth in the Court's initial review, the Court finds that allowing the amendment as to this claim would be futile.

### C. Count III – "Access to Courts"

Count III alleges that Defendants Ashby, Durham, Sergeant Eric Eubanks,[5] and Miller violated Plaintiff's First Amendment right to access the courts by discontinuing his access to his laptop and other equipment. This is a new claim.

To state a claim for a denial of access to the courts, a prisoner must demonstrate actual prejudice to past or pending litigation that challenges his conviction or conditions of confinement. *Lewis v. Casey*, 518 U.S. 343, 355 (1996). That is, there must be an actual injury, and no actual injury occurs without a showing that such a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented[.]" *Id*. at 356; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (stating that an inmate must show, "for example, . . . such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim"). The proposed amended complaint does not allege that Plaintiff suffered actual injury as a result of being denied use of the laptop or other equipment. Instead, it alleges:

> 105. By discontinuing Plaintiff's access to his laptop and other equipment used for purposes of pursuing his legal defense for retaliatory purposes, Defendants interfered with that access [to the court].

---

[5] Eubanks was not named as a defendant in the original complaint.

7

> 106. As a direct and proximate result of Defendants' interference, Plaintiff was prevented from effectively preparing his litigation defense, further pursing [sic] his habeas petition, and prosecuting earlier filed civil rights actions.

Because Plaintiff does not allege that he suffered actual injury from being denied access to his laptop and other equipment, the Court finds that it would be futile to grant the motion to amend with regard to this claim.

### D. Count IV – "Right to Counsel"

Count IV of the proposed amended complaint alleges that Defendants Ashby, Durham, Eubanks, Miller, and Redmon violated Plaintiff's Sixth Amendment right to have assistance of counsel by withholding his legal mail and depriving him of access to a laptop and other equipment. This is a new claim.

"To state a § 1983 claim for deprivation of right to counsel, there must be some allegation indicating an interference with the prisoner's relationship with counsel." *Jones v. George*, No. 1:12-CV-00007, 2012 WL 201845, at *2 (M.D. Tenn. Jan. 23, 2012). The Court will deny an amendment related to an alleged Sixth Amendment violation for being denied his mail and access to his laptop and other equipment. Plaintiff alleges that prior to March 2020, whether at FCDC or LMDC, he was allowed to use a laptop to access the contents of DVDs and other equipment by the state-court judge. It is clear that Plaintiff, a pretrial detainee, has counsel in his state-court criminal case, but the proposed amended complaint explains that Plaintiff has been an active participant in his legal defense and that the state-court judge authorized his use of a laptop in 2017.

The proposed amended complaint alleges:

> 109. By withholding Plaintiff's legal mail for eleven months, Defendants knowingly or recklessly interfered with Plaintiff's Sixth Amendment right to counsel.

8

> 110. By further depriving Plaintiff of his access to a laptop and other equipment used to access materials provided by his legal team, Defendants knowingly or recklessly interfered with Plaintiff's Sixth Amendment right to counsel.
>
> 111. As a direct and proximate result of Defendants' interference, Plaintiff was prevented from effectively preparing his criminal defense. Further, Plaintiff was prevented from communicating effectively with his counsel.

Although Plaintiff alleges that he was prevented from *effectively* communicating with his counsel, Plaintiff does not allege that he could not communicate at all or that he was prejudiced in his criminal case. "Absent some kind of claimed interference with his relationship with his attorney or prejudice to his defense, plaintiff fails to state a § 1983 claim for an infringement of his Sixth Amendment right." *Russell v. Juv. Ct. of Kingsport, Tenn.*, No. 2:15-CV-13-JRG-DHI, 2015 WL 3506523, at *7 (E.D. Tenn. June 3, 2015) (citing *Weatherford v. Bursey*, 429 U.S. 545, 558 (1977)). For example, courts have rejected claims such as being denied telephone use for certain periods of time, so long as the detainee "had other reasonable means to contact his or her attorney *and where no prejudice resulted*." *Stamper v. Campbell Cty., Ky.*, No. 2007-49 (WOB), 2009 WL 2242410, at *2 (E.D. Ky. July 24, 2009) (emphasis added); *see also Uraz v. Ingham Cty. Jail*, No. 1:19-CV-550, 2019 WL 4292394, at *10 (W.D. Mich. Sept. 11, 2019) ("Plaintiff utterly fails to allege facts demonstrating that he had no other means of communicating with his attorney or that he suffered prejudice. Plaintiff therefore fails to demonstrate a violation of the Sixth Amendment.").

The Court will deny the motion for leave to amend the complaint to allege a violation of Plaintiff's Sixth Amendment rights.

9

### E. Count V – "Unreasonable Search"

In Count V of the proposed amended complaint, Plaintiff alleges that Defendants Ashby, Durham, and Miller unreasonably strip-searched him on camera in violation of the Fourteenth Amendment.

As Defendants point out in their response, the amendment to this claim does not cure the defect identified in the Court's initial review, *i.e,*, that strip searches in a prison setting are not *per se* unreasonable, *see Bell v. Wolfish*, 441 U.S. 520, 558 (1979), and the fact that a body camera was in use during the strip search does not make it unconstitutional. *See, e.g.*, *Hubbert v. Myers*, No. 92-1232, 1993 WL 326707, at *1 (6th Cir. Aug. 26, 1993) (per curiam). For the reasons set forth by the Court on initial review, the Court finds that allowing amendment of this claim would be futile.

### F. Count VI – "Cruel and Unusual Punishment"

On initial review, the Court allowed claims regarding being housed in a single cell and the conditions of his cell to continue against Defendants Miller, Wedding, Ashby, Walker, and Durham. Specifically, regarding the cell conditions, the complaint alleged that since March 2020 he had been housed in a single cell that had not been cleaned in three weeks, with a non-working toilet; that there was mold, rust, and blood on the walls; that dust in his cell has caused him two "major" headaches and chest problems; and that there were flies, spiders, and roaches.

The proposed amended complaint provides new allegations relating to how Plaintiff's housing status was made, as well as new claims related to changes to his housing status occurring after he filed this action. According to the proposed amended complaint, when Plaintiff was returned to LMDC in March 2020, from FCDC, the LMDC Classification

Committee[6] assigned him to Dorm 9, which is referred to as solitary housing because, although it has five cells, none of the other four cells is occupied by inmates. The proposed amended complaint also states that, at that time, the Classification Committee placed Plaintiff on "single-cell open" status, also known as "administrative segregation or solitary," meaning that Plaintiff was housed alone, but was allowed to leave his cell for several hours per day, although he was not allowed to mix with inmates at any time. The proposed amended complaint also states that on September 16, 2020, he was "placed on '23-1' or 'single-cell closed' [meaning that he is locked in his cell 23 hours per day] and 'SORT' status [meaning that during the one hour per day he is allowed to leave his cell he must be accompanied by SORT officers and his hands and feet are shackled]." Plaintiff alleges that because of the restrictive housing conditions, he has experienced "psychological trauma, depression, anxiety, and nightmares."[7]

In Count VI, Plaintiff alleges Fourteenth Amendment violations against Arriaga, Ashby, Baker, Collins, Davis-Reese, Durham, Gibson, Kassinger, Klausing, Krank, Lagow, Lonnon, Donald Miller, Phillip Miller, Puckett, Stanfield, Story, Troutman, Walker, Wallace, Wedding, and Whitlow for violating his due-process rights by punishing him with single-celling and 23-1 status and by subjecting him to inhumane conditions of confinement. The Fourteenth Amendment claim related to the 23-1 status is actually a proposed supplement to the complaint. The Court will grant leave to amend/supplement the complaint regarding Fourteenth Amendment claims against Arriaga, Ashby, Baker, Collins, Davis-Reese, Durham, Gibson, Kassinger, Klausing, Krank, Lagow, Lonnon, Donald Miller, Phillip Miller, Puckett, Stanfield, Story, Troutman, Walker, Wallace, Wedding, and Whitlow.

---

[6] That committee is made up of Arriaga, Ashby, Baker, Collins, Davis-Reese, Durham, Gibson, Kassinger, Klausing, Krank, Lagow, Lonnon, Donald Miller, Phillip Miller, Puckett, Stanfield, Story, Troutman, Walker, Wallace, Wedding, and Whitlow.
[7] Plaintiff has filed a motion for preliminary injunction ordering Defendants to remove him from 23-1 status and move him to general population or, alternatively, return him to "administrative status."

### G. Count VII – "Retaliation"

Count VII alleges that all of the actions ascribed to Defendants in the complaint were retaliation. The Sixth Circuit Court of Appeals has explained the elements necessary for a First Amendment retaliation claim as follows:

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

The proposed amended complaint refers to Plaintiff having filed grievances, sent letters, and having filed a federal lawsuit, *i.e.*, *Mallory v. Bolton*, 3:19-CV-120-CRS, and asserts that the actions described in the complaint were done in retaliation because Plaintiff took these actions. However, Plaintiff does not allege that the grievances he filed were nonfrivolous, *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (holding that, although filing grievances satisfies the protected conduct necessary to support a retaliation claim, frivolous grievances are not protected under the First Amendment); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (holding that the right to file grievances or lawsuits is protected only insofar as they are not frivolous), although they may have been nonfrivolous inasmuch as they concerned Defendants' actions relating to claims which have been or will be allowed to proceed. Plaintiff also does not allege that writing letters is protected conduct.

Although Plaintiff does not allege that the 2019 federal lawsuit, *Mallory v. Bolton*, 3:19-CV-120-CRS, was not frivolous, the Court takes judicial notice that that case survived initial review and is still pending. Thus, the Court finds that Plaintiff has alleged non-frivolous, protected conduct at least as to filing and litigating his federal case.

Turning to the causal element of a retaliation claim, element (3) set forth above, the proposed amended complaint alleges that Plaintiff's filing of grievances, writing letters, and filing his federal lawsuit motivated Defendants' actions. The Court is aware that because the first-filed case was filed in February 2019 with an amended complaint in May 2019, there is a time lag between the alleged protected conduct and many of the alleged adverse actions in this case. However, the 2019 lawsuit, is still ongoing. The Court assumes for purposes of deciding whether to allow amendment of the complaint that Plaintiff has sufficiently alleged the third element of a retaliation claim.

The Court turns to a consideration of the second element of a retaliation claim – whether "an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct." *Thaddeus-X*, 175 F.3d at 394. The adverse-action inquiry is ordinarily a question of fact for the jury; however, some "adverse actions" are so *de minimis* that they fail to state a retaliation claim as a matter of law. *See Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). "[T]he 'ordinary firmness' standard is 'intended to weed out only inconsequential actions.' The factual question is whether the injury inflicted is so slight that it could not reasonably be expected to deter protected conduct." *Id.* at 606 (internal citation omitted).

Here, the Court finds that the actions Plaintiff has alleged are sufficiently adverse that they are not *de minimis*. *See, e.g.*, *Campbell v. Mack*, 777 F. App'x 122, 135 (6th Cir. 2019) (holding that a strip search may constitute adverse action in certain circumstances); *Payton v. Golladay*, No. 2:19-CV-10, 2019 WL 2912207, at *9 (W.D. Mich. July 8, 2019) ("Plaintiff's claims against Defendants . . . for the retaliatory searches and confiscation of legal papers, legal mail supplies, and other property is sufficiently adverse to satisfy the adverse-action requirement

13

of *Thaddeus-X*."); *Clark v. Johnston*, 413 F. App'x 804, 815 (6th Cir. 2011) ("Because deprivation of personal and legal property can be considered an adverse action, Clark adequately pleaded facts and allegations sufficient to establish the second element of this retaliation claim."); *Hill v. Lappin*, 630 F.3d at 474 ("This court has held that restricting a prisoner's housing by placing him in administrative segregation constitutes an adverse action."). The Court will grant leave to amend/supplement Plaintiff's retaliation claims.

### III. ORDER

For the foregoing reasons,

**IT IS ORDERED** that Defendants' motion to dismiss (DN 9) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to amend/supplement (DN 14) is **GRANTED in part** as to: Count I (right to receive legal mail) against Defendants Ashby, Durham, Miller, and Redmon; Count VI (cruel and unusual punishment) against Arriaga, Ashby, Baker, Collins, Davis-Reese, Durham, Gibson, Kassinger, Klausing, Krank, Lagow, Lonnon, Donald Miller, Phillip Miller, Puckett, Stanfield, Story, Troutman, Walker, Wallace, Wedding, and Whitlow; and Count VII (retaliation) against all Defendants. Plaintiff's motion for leave to amend/supplement (DN 14) is **DENIED** as to all other claims.

The Clerk of Court is **DIRECTED** to add as Defendants to this action Eubanks, Arriaga, Baker, Collins, Davis-Reese, Gibson, Kassinger, Klausing, Krank, Lagow, Lonnon, Donald Miller, Phillip Miller, Puckett, Stanfield, Story, Troutman, Wallace, and Whitlow.

Date:

cc: Counsel of record
A961.009